# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

September 17, 2014

Lyle W. Cayce
Clerk

No. 13-40457

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

EDGAR ADELAIDO JIMINEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC 7:12-CR-367-2

Before KING, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Edgar Adelaido Jiminez appeals the 37-month prison sentence imposed by the district court following his guilty plea conviction of aiding and abetting the making of a false statement or representation with respect to information required to be kept in the records of a federal licensed firearms dealer, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2. Jiminez argues that the district court reversibly erred in the application of the Sentencing Guidelines. For

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the following reasons, we VACATE the sentence and REMAND for resentencing.

## I.     Factual and Procedural Background

Count One of a four-count indictment issued on March 20, 2012, charged Edgar Adelaido Jiminez and Juan Angel Nunez, Jr. with aiding and abetting the making of a false statement with respect to information required to be kept in the records of a licensed firearms dealer.  Specifically, the indictment alleged that Jiminez served as a "straw purchaser" by falsely representing that he was the actual buyer of four rifles from The Armory, a firearms dealer in McAllen, Texas.  The remaining counts charged Nunez and other codefendants with similar offenses involving the same type of firearm.

On January 4, 2013, pursuant to a written plea agreement, Jiminez pleaded guilty to Count One of the indictment.  The plea did not contain an appeal waiver provision.  As part of the factual basis underlying the plea, Jiminez admitted that he purchased firearms from The Armory and that, as part of the purchases, he represented on the Bureau of Alcohol, Tobacco, and Firearms form 4473 that he was the actual purchaser of the firearms.  Jiminez further admitted that he was not the actual purchaser, but instead purchased the firearms on behalf of Nunez.

In an interview with ATF agents, Jiminez stated that he purchased Romanian AK-47 rifles from The Armory on three separate occasions. He purchased four rifles on September 18, 2010, five rifles on September 21, 2010, and five additional rifles on September 23, 2010.  On each of these occasions, Jiminez and Nunez met an individual at a parking lot, received instructions and cash, and drove to The Armory.  Jiminez then purchased the rifles, returned with Nunez to the parking lot, unloaded the guns, and received a cash payment.  Jiminez attempted to purchase another five rifles from The Armory on a fourth occasion, but that purchase was denied.

No. 13-40457

Prior to sentencing, the probation officer prepared a Presentence Report (PSR). The PSR determined that Jiminez's base offense level was 12 pursuant to U.S.S.G. § 2K2.1(a)(7) (2009). With respect to specific offense characteristics, Jiminez received a four-level increase under U.S.S.G. § 2K2.1(b)(1)(B) because he was held responsible for straw purchasing 14 firearms.[1] He received two additional four-level increases, for engaging in the "trafficking" of firearms, U.S.S.G. § 2K2.1(b)(5), and for transferring firearms in connection with the felony offense of unlawful exportation of firearms, U.S.S.G. § 2K2.1(b)(6). This resulted in a total offense level of 24.

However, the PSR found that the cross-reference at U.S.S.G. § 2K2.1(c)(1)(A), which applies where a defendant "possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense," *id.*, applied to Jiminez. The PSR determined that this other offense was the illegal exportation of firearms, explaining:

> As previously noted, Edgar Jiminez transferred and disposed of the 14 firearms he purchased to Juan Nunez for further distribution to "Pareja/Paraja." Thus, it is *reasonably foreseeable* that Edgar Jiminez knew that the firearms were being illegally smuggled into Mexico, due to the suspicious circumstances surrounding the firearms purchases; the types of weapons; proximity of the border and drug cartel violence; the number of weapons; and the type and nature of how the weapons were purchased. Additionally, there is no record that anyone in the straw purchasing organization secured a license to export these weapons into Mexico. Thus, the organization would have the potential to facilitate any other felony offense of exportation of arms without [a] required validated export license.

---

[1] Although the indictment charged Jiminez with the straw purchases of only four firearms, the district court, in calculating the Guidelines range, was entitled to consider relevant conduct that was not formally charged. *See* U.S.S.G. §§ 1B1.3(a)(1)(A) and (B); *United States v. Solis*, 299 F.3d 420, 462 (5th Cir. 2002).

(emphasis added).  Application of this cross-reference resulted in a base offense level of 26, the base offense level for the exportation of illegal firearms.[2] U.S.S.G. § 2M5.2(a)(1).  Following a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), the resulting total offense level was 24.

Jiminez had no prior criminal convictions and, therefore, had zero criminal history points.  Accordingly, his criminal history category was I.  The resulting Guidelines range of imprisonment, based on a total offense level of 24, a criminal history category of I, and a statutory maximum of five years imprisonment for the crime, 18 U.S.C. § 924(a)(1), was 51 to 60 months, *see* U.S.S.G. Sentencing Table.

Jiminez submitted written objections to the PSR.  He objected to the enhancement for trafficking in firearms, the enhancement for possessing or transferring a firearm in connection with another felony offense, and the use of the cross-reference.  He also requested that the district court consider a minor role reduction pursuant to U.S.S.G. § 3B1.2, as well as a third-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b).  Further, Jiminez requested a downward departure from the recommended Guidelines range.

At sentencing, the Government moved for the third-level acceptance of responsibility reduction under U.S.S.G. § 3E1.1(b), and the district court granted the motion.  Jiminez then re-raised his objections to the application of the enhancements and the cross-reference.  The Government argued that "the enhancements were appropriate under the *Juarez . . .* standard," (emphasis

---

[2] The cross-reference directs the use of U.S.S.G. § 2X1.1 (Attempt, Solicitation, Conspiracy) with respect to the "other offense" if the resulting offense level is greater than the offense level already determined using U.S.S.G. § 2K2.1.  The base offense level under U.S.S.G. § 2X1.1 is the same as the base offense level of the underlying substantive offense— here, the exportation of illegal firearms.  *See* U.S.S.G. § 2X1.1(a).

added), apparently in reference to *United States v. Juarez*, 626 F.3d 246 (5th Cir. 2010). The district court responded, "I agree." The Government then stated that it had no objection to the district court's consideration of a minor role reduction for the cross-reference. Thereafter, the district court adopted the factual findings contained in the PSR and granted a two-point minor role reduction, explaining:

> I conclude that the report was correctly scored, that the enhancements were appropriately made. However, on the cross reference to unlawfully exporting firearms, Mr. Jiminez being a conspirator in that, his role being to purchase the firearms that ultimately were smuggled into Mexico, I find in that conspiracy he was a minor participant so I'll grant a two point role adjustment.

This resulted in a total offense level of 21 which, when combined with a criminal history category of I, resulted in a Guidelines range of 37 to 46 months. *See* U.S.S.G. Sentencing Table. The district court sentenced Jiminez to 37 months of imprisonment and three years of supervised release. Jiminez filed a timely notice of appeal.

## II.    Standard of Review

We ordinarily review the appeal of a sentence for procedural error and for substantive reasonableness, applying an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). However, because Jiminez challenges only the district court's application of the Guidelines, this court "need consider only that procedural aspect of the sentence." *United States v. Simmons*, 649 F.3d 301, 303 (5th Cir. 2011). The district court's application of the Guidelines is reviewed de novo, and its factual findings are reviewed for clear error. *United States v. Hicks*, 389 F.3d 514, 529 (5th Cir. 2004).

If a district court commits a significant procedural error, such as an improper calculation of the Guidelines range, the appellate court must reverse and remand unless the error was harmless. *See United States v. Delgado-*

*Martinez*, 564 F.3d 750, 752–53 (5th Cir. 2009). "A procedural error during sentencing is harmless if the error did not affect the district court's selection of the sentence imposed." *Id.* at 753 (internal citation and quotation marks omitted.). The party seeking to uphold the sentence bears the burden of establishing harmless error and "must point to evidence in the record that will convince [the appellate court] that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error made in arriving at the defendant's guideline range." *Id.* (internal citation and quotation marks omitted).

### III.    Application of the Guidelines

Jiminez challenges the application of the U.S.S.G. § 2K2.1(c)(1)(A) cross-reference, arguing that the district court applied the wrong legal standard and that, even if it applied the correct legal standard, the evidence does not support the application of the cross-reference. He also argues for the first time on appeal that, assuming the district court's application of the cross-reference was appropriate, the district court erred by failing to subtract three levels pursuant to U.S.S.G. § 2X1.1(b).[3]

The cross-reference provision at issue states:

(1) If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply—
(A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above[.]

---

[3] On appeal, Jiminez does not challenge the enhancements for trafficking in firearms, U.S.S.G. § 2K2.1(b)(5), or for possessing or transferring a firearm in connection with the felony offense of unlawful exportation of firearms, U.S.S.G. § 2K2.1(b)(6).

No. 13-40457

U.S.S.G. § 2K2.1(c). This court has held that the cross-reference applies only if the district court finds that: (1) "the firearm facilitated or had the potential to facilitate another offense," and (2) "the defendant transferred the firearm *knowing or intending* it to be used or possessed for that offense." *United States v. Johnston*, 559 F.3d 292, 295 (5th Cir. 2009) (emphasis added). In *Johnston*, we reviewed a district court's application of the cross-reference where "the defendant knew *or should have known*" that the firearm would be used to commit another offense—in that case, attempted murder. *Id.* at 296. We reversed and remanded for resentencing, clarifying that the cross-reference applies only if the defendant "transferred the gun *knowing*" it would be used to commit the other offense, and stating that "[t]he cross-reference . . . should not be followed if [the defendant] should have known (but did not actually know)" the gun would be used for the other offense. *Id.* at 295–96 (emphasis added).[4]

The standard applied in the PSR, which was adopted by the district court, is less than clear. The Government contends that the PSR asserted the proper standard, as it stated that the cross-reference applies "if the defendant . . . possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense." But this was a mere recitation of the text of U.S.S.G. § 2K2.1(c). In the PSR's analysis of the cross-reference, it stated that, because "it is *reasonably foreseeable* that . . . Jiminez knew that the firearms were being illegally smuggled into Mexico," the cross-reference applied. (emphasis added). This suggests that the lower court, in adopting the PSR, applied a standard less stringent than *Johnston*'s "actual knowledge" requirement. Such a conclusion

---

[4] We also held that a defendant's knowledge that the firearm has the *potential* to facilitate another offense is insufficient to trigger the cross-reference. *Id.*

is bolstered by the lower court's reference at sentencing to the *Juarez* case.  In *Juarez,* we analyzed different Guidelines provisions, U.S.S.G. §§ 2K2.1(b)(5) and (6), which are both triggered by the lesser "reason to believe" standard. *See Juarez,* 626 F.3d at 249–50.  Finally, the lower court never stated or otherwise indicated on the record a finding that Jiminez had actual knowledge that the firearms would be smuggled to Mexico.  Therefore, we conclude that the district court erred by applying a standard inconsistent with that laid out in *Johnston.*[5]

The Government further argues that, even assuming the inapplicability of the cross-reference, the lower court's error was harmless.  The Government has the "heavy burden" of "convincingly demonstrat[ing]" that the lower court would have reached the same sentence absent the error.  *United States v. Ibarra-Luna,* 628 F.3d 712, 717 (5th Cir. 2010).  Here, it is undisputed that, assuming all the same adjustments apply, the total offense level without application of the cross-reference—19—would be lower than that under the cross-reference—21.  The term of imprisonment range for the former is 30 to 37 months, while the range for the latter is 37 to 46 months.  *See* U.S.S.G. Sentencing Table.

However, the Government challenges Jiminez's assumption that he would be entitled to a two-level minor role reduction if sentenced under the straw purchasing Guidelines provision, *i.e.*, the applicable provision absent the cross-reference.  The Government points to the lower court's discussion of the reduction, which focused on Jiminez's role in the exportation of firearms: "[O]n the cross[-]reference to unlawfully exporting firearms, Mr. Jiminez being a

---

[5] Accordingly, we need not reach Jiminez's alternative argument that there was insufficient evidence to support a finding of actual knowledge.  Nor do we reach Jiminez's argument that the district court erred in calculating the Guidelines range under the cross-reference by failing to subtract three levels pursuant to U.S.S.G. § 2X1.1(b).

conspirator in that, his role being to purchase the firearms that ultimately were smuggled into Mexico, I find in that conspiracy he was a minor participant so I'll grant a two point role adjustment." According to the Government, this statement makes clear that the lower court would have applied the minor role reduction only in the context of the cross-reference. But because the lower court was applying the cross-reference based on the "other offense" of illegal exportation of firearms, it is no surprise that its analysis focused solely on Jiminez's conduct in relation to that crime. There was no reason for the court to address whether a minor role adjustment would apply with respect to Jiminez's role in the straw purchases, as it was not sentencing Jiminez pursuant to that Guidelines provision.

The Government argues that, with respect to the straw purchases, Jiminez cannot be considered "substantially less culpable than the average participant" in the offense, as required for application of the minor role reduction. U.S.S.G. § 3B1.2 cmt. n.3(A); *see also United States v. Villanueva*, 408 F.3d 193, 204 (5th Cir. 2005) ("[I]n order to qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity." (internal citation and quotation marks omitted)). But deciding whether a minor role reduction applies "involves a determination that is heavily dependent upon the facts of the particular case," U.S.S.G. § 3B1.2 cmt. n.3(C), a determination the lower court had no occasion to make in the first instance. We are reluctant to speculate on what the district court could or will do in this heavily fact-bound situation. It is enough for present purposes for us to conclude that the Government has not "convincingly demonstrate[d]" that the lower court would find a minor role reduction inappropriate upon resentencing. *Ibarra-Luna*, 628 F.3d at 717.

Finally, it is true that Jiminez's 37-month sentence falls within the Guidelines range even absent application of the cross-reference, and after

applying the minor role adjustment.  But it falls at the *high* end of the range of 30 to 37 months.  In selecting a term of imprisonment at the *low* end of what it believed to be the proper Guidelines range, the lower court stated: "I made this . . . reduction off your sentence because of your youth, in part, and in part because I believe this sentence is already harsh enough where you'll learn your lesson and not resort to any kind of future criminal activity."  The lower court also allowed Jiminez to self-surrender several days after the sentencing hearing, rather than requiring that he be taken into custody immediately.  This at least suggests that, upon resentencing, the lower court may again show leniency and select a sentence at the low end of the applicable range.  Therefore, the Government has failed to meet its heavy burden to show that the lower court would have reached the same sentence without applying the cross-reference.  Indeed, "the improper calculation of the Guidelines range can rarely be shown not to affect the sentence imposed."  *Delgado-Martinez*, 564 F.3d at 753 (internal citation and quotation marks omitted).

## IV.   Conclusion

Because the district court erred by utilizing the wrong legal standard in applying the U.S.S.G. § 2K2.1(c) cross-reference, and because the Government has failed to meet its burden to show that the error was harmless, we VACATE Jiminez's sentence and REMAND for resentencing.